UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **EXCLUSIVE REAL ESTATE INVESTMENTS LLC** | **CASE NO. 2:21-CV-00443** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **MCLARENS INC ET AL** | **MAGISTRATE JUDGE KAY** |

MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 36] filed by defendant SGL No. 1 Limited ("SGL1"), seeking dismissal of plaintiff's claims in this first-party insurance dispute. Plaintiff opposes the motion. Doc. 38.

I.
BACKGROUND

This suit arises from damage to a property owned by plaintiff in Lake Charles, Louisiana, following a storm on September 11, 2019. At all relevant times the property, a single-story, flat-roofed building located at 101 North Enterprise Boulevard, was insured under a policy issued by Lloyd's of London Syndicate 609, to which SGL1 is the sole subscriber. Doc. 36, atts. 7 & 8; *see* doc. 36, att. 5, pp. 8–20 (photographs of building). The policy provides dwelling coverage at a limit of $250,000.00, subject to an 80% coinsurance. Doc. 36, att. 8, p. 4. It is a named peril policy, providing coverage only "for direct physical loss to the property covered caused by a peril listed below unless the loss is excluded in the General Exclusions." *Id.* at 9. These perils include fire or lightning, internal explosion, windstorm or hail, explosion, riot or civil commotion, aircraft, vehicles, smoke,

volcanic eruption, and vandalism or malicious mischief. *Id.* at 9–10. Under Windstorm/Hail, the policy notes that such coverage does not include loss "caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening." *Id.* at 9. It also contains the following exclusion:

> **PRE-EXISTING DAMAGE EXCLUSION**
> **Dwelling Property**
> The following is added to the **GENERAL EXCLUSIONS**:
> We do not insure for loss caused directly or indirectly by any of the following:
> a) Any damage which occurred prior to policy inception regardless of whether such damages were apparent at the time of the inception of this policy or at a later date; or
> b) Any claims or damages arising out of workmanship, repairs and/or lack of repairs arising from damage which occurred prior to policy inception.
> Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

*Id.* at 22.

Plaintiff purchased the property "as is" in 2016 for $25,000.00. Doc. 43, att. 1, pp. 16–17, 24–25. At that time Jonathan Howard and Omar Edwards, the LLC's two principals, inspected the property. *Id.* at 18–21. Howard, who served as 30(b)(6) representative, admitted that he did not inspect the roof at that time or have any discussions about it with the seller. *Id.* at 18–24. He was also unaware of anyone else inspecting the roof and did not know its age or whether any work was done on it prior to the purchase. *Id.* at 21, 75. Additionally, he did not have a termite inspection performed. *Id.* at 22. After purchasing the property, plaintiff had the roof tar reapplied and exhaust vents and metal ridge caps

installed on one of the parapet walls. *Id.* at 78. No work was done to the structure of the roof, however. *Id.* at 75.

On September 11, 2019, a thunderstorm traveled through Lake Charles while Howard was at the property. *Id.* at 101–04, 178. He recalled seeing rain blowing sideways. *Id.* at 103. He then heard a loud sound around 8:00 pm and found that a portion of the roof had collapsed. *Id.* at 103–05. Plaintiff filed a claim with SGLI the next day, reporting a partial roof collapse because of "damage from wind and rain." Doc. 36, att. 9 (property loss notice form). SGLI inspected the property through field adjuster Jimmy Romero on September 20 and September 27, 2019. Doc. 36, att. 10, pp. 13–14. Romero did not observe any evidence of wind damage at the property and instead attributed the roof collapse to the abundance of rain. *Id.* at 37–38; doc. 36, att. 11. Specifically, he noted that the roof had collapsed toward the rear end of the building at the lowest slope of the roof. Doc. 36, att. 11, p. 2. He also recalled that Howard had told him he believed the collapse was the result of rain overwhelming the roof's drainage system. Doc. 36, att. 10, p. 31. In his report he stated:

> Our inspection of the modified built-up roof system revealed the roof appeared to be worn and the roof was sagging near the area where the collapse took place. The insured reported the damages as wind; however, during our inspection, he explained that he felt the damages were most likely caused due to the abundance of rain during the storm that overwhelmed the roof drainage system. Further inspection of the roof and the building revealed the brick exterior north wall was falling away from the building and appears to be an ongoing issue as there were old repairs to the exterior wall that had been completed prior to the roof collapsing, per the insured. The damages to the building's exterior, appear to be an ongoing preexisting condition that has weakened the roof structure allowing for the collapse to occur.
> Our inspection of the interior revealed structural and water damage to the roof frame and supporting walls of the interior portion of the building

> along with the interior finishes. The damages were toward the back of the building in the Laundry Room and a Storage Room that could not be observed during our initial inspection due to the access being blocked by the collapsed roof.

Doc. 36, att. 11, pp. 2–3. In his deposition Romero further described the lack of evidence of any wind damage, such as downed tree limbs, peeled back portions of the roof, and downed fences and shingles. Doc. 36, att. 10, pp. 43–45. Accordingly, Romero concluded that the damages were inconsistent with a covered peril. Doc. 36, att. 11, p. 3. SGL1 sent a letter to plaintiff, communicating these results and advising that it was sending an engineer to inspect the property. Doc. 36, att. 12.

Senior forensic engineer John Rabenberg, P.E., inspected the property on behalf of SGL1 on October 19, 2019. Doc. 36, att. 4. He also reviewed site-specific weather data, noting that .41 inches of rain were recorded on the date of loss and .46 inches the following day, and that "there was no wind event recorded on the DOL which produced an estimated windspeed of 40 mph at the subject property, or 58 mph within three miles." Doc. 36, att. 5, p. 3. Rabenberg offered the following conclusions:

1. Although 0.87 inch rain was recorded on the DOL and the next day, long term wood creep caused the roof to sag adjacent to the west wall which prevented moisture to drain as intended.
2. The weight of the multiple layers of roofing materials, combined with the increased weight of standing water over time, long term creep of the trusses, decreased bearing area of the bottom chord of the trusses as a result of lateral displacement of the top of the masonry wall, and decreased cross-sectional area of the wood members caused by wood burrowing insects resulted in the area of the roof to collapse on the DOL.
3. The displacement of the top and cracks in the unreinforced masonry north wall are consistent with vibrations that are produced by trains passing adjacent to the subject property combined with differential foundation placement.

> 4. No distress consistent with wind related forces was observed on the structure.

*Id.* at 5. SGL1 accepted the report and sent plaintiff a letter denying the claim on November 3, 2019, citing the named perils clause and pre-existing damage exclusion and asserting that "damage caused by the collapse, weight of rain that collects on a roof, and/or insect damage, are not named perils . . . [and] damages arising out of workmanship, repairs, and/or lack of repairs arising from damage which occurred prior to policy inception is excluded." Doc. 36, att. 13.

Plaintiff filed suit in the Fourteenth Judicial District Court, Calcasieu Parish, Louisiana, on October 30, 2020, raising claims of breach of contract and bad faith. Doc. 1, att. 2. SGL1 removed the suit to this court, invoking its diversity jurisdiction under 28 U.S.C. § 1332. Doc. 1. It now moves for summary judgment, asserting that there is no issue of material fact as to whether coverage was owed for the loss. Doc. 36. Plaintiff opposes the motion, relying on Howard's assertions that the collapse was caused by wind. Doc. 38. Plaintiff also asserts that it intends to file a *Daubert* motion challenging the admissibility of Rabenberg's opinions because he is only licensed as a structural engineer in Texas, not Louisiana. Doc. 38.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact.

*Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### LAW & APPLICATION

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). Louisiana law provides that an insurance policy is a contract and that its provisions are construed using the general rules of contract

interpretation in the Louisiana Civil Code. *Hanover Ins. Co. v. Superior Labor Svcs., Inc.*, 179 F.Supp.3d 656, 675 (E.D. La. 2016). The words of the policy are given their generally prevailing meaning and "interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Coleman v. Sch. Bd. of Richland Par.*, 418 F.3d 511, 516–17 (5th Cir. 2005) (citing La. Civ. Code arts. 2047, 2050). Ambiguities in the policy must be construed against the insurer and in favor of coverage. *Id.* The court resolves an ambiguity by asking "how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." *Id.*

First, the court rejects any potential *Daubert* challenge to Rabenberg on the basis described by plaintiff: that he is only licensed as a structural engineer in Texas rather than Louisiana. Plaintiff asserts that Louisiana's requirements are more stringent. However, Rabenberg's curriculum vitae shows that he is sufficiently qualified to offer opinion testimony. Any issues with licensing variations would go to the weight rather than admissibility of that opinion.

As for the merits of the motion, SGL1 has provided competent summary judgment evidence through the depositions, reports, and photographs, supporting its position that the roof collapse was caused by rain and preexisting damage. Plaintiff's only evidence refuting this is his testimony that Howard saw rain blowing sideways at the time of the storm. He fails to counter, however, with any evidence of wind damage to the structure. Plaintiff attempts to poke holes in both Rabenberg and Romero's reports, pointing to the delays between the date of loss and inspection, and asserts that there was insufficient evidence of the loss remaining to permit an adequate investigation at those times. Both reports,

however, contain several photos showing the damage the two men were able to observe and supporting their conclusions. Plaintiff has put forth no competent evidence to challenge these conclusions. Accordingly, SGL1 has met its burden of showing that no coverage was owed for the loss and that no breach of the duty of good faith could have occurred based on the denial of coverage.

### IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 36] will be **GRANTED** and all claims in this matter will be **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** in Chambers on the 9th day of March, 2023.

*JAMES D. CAIN, JR.*
**UNITED STATES DISTRICT JUDGE**